1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Delores Jane Clark,                    )    No. CV-11-2561-PHX-BSB
                                           )
10                 Plaintiff,              )    **ORDER**
                                           )
11  vs.                                    )
                                           )
12  Michael J. Astrue, Commissioner of the)
    Social Security Administration,        )
13                                         )
                   Defendant.              )
14  _____)

15         Delores Jane Clark (Plaintiff) seeks judicial review under 42 U.S.C. § 405(g) of the

16  final decision of the Commissioner of Social Security (the Commissioner), denying her

17  application for supplemental security income benefits under the Social Security Act.  The

18  parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C.

19  § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1.  For the

20  following reasons, the Court remands this matter for further proceedings.

21  **I. Procedural Background**

22         In June 2007, Plaintiff filed an application for supplemental security income, 42

23  U.S.C. §§ 1381-83f, under Title XVI of the Social Security Act, alleging disability with an onset

24  date of March 2003.  (Tr. 18.[1])  After the Social Security Administration denied Plaintiff's

25  initial application and her request for reconsideration, she requested a hearing before an

26  administrative law judge (ALJ). After conducting a hearing, the ALJ issued a decision finding

27  _____

28         [1] Citations to "Tr." are to the administrative transcript, which appears at docket 12.

Plaintiff not disabled under the Social Security Act. (Tr. 30-58.)  This decision became the final decision of the Commissioner of Social Security when the Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-6); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.)  Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.  Medical Record

As set forth in the parties' briefing, Plaintiff's application for benefits is based on her spondyloarthritis (arthritis of the spine) and obesity.  The record before the Court establishes the following chronology of treatment and diagnosis.

### A.  Treating Physicians at Phoenix Indian Medical Center

Between June 4, 2007 and July 20, 2009, Plaintiff received treatment at the Phoenix Indian Medical Center (PIMC) from Georgia L. Tsingine, M.D.,[2] a primary care physician, Lisa M. Sumner, M.D., a rheumatologist, and Neil Irick, M.D., a pain management specialist .  She was diagnosed with and received treatment for seronegative spondyloarthritis (arthritis of the spine), obesity, and chronic foot dermatitis and cellulitis. (Tr. 222-475, 603-04, 647-649, 669-694, 709-716, 731-752, 767-792, 799-806, 813-828, 835-836, 853-856, 879-884, 895-910, 919-934, 955-970, 987-994, 1003-1062, 1075-1136, 1145-1152, 1163-1172, 1185-1188, 1197-1200, 564-565.[3])

Plaintiff tested positive for elevated sedimentation rates and C-reactive protein. (Tr. 489, 488, 486, 484, 483, 482, 337.)  Plaintiff's PIMC treatment notes indicate that she had persistent severe pain in her back, neck, shoulders, knees and hips, recurring infections on her feet, numbness and swelling of the feet, cellulitis, difficulty sleeping, and wrist pain.  (Tr. 465, 457, 433, 425, 427, 413, 401, 383, 377, 353, 297, 291, 227, 267, 237, 230, 225-26.)  Plaintiff

---

[2]  The ALJ erroneously identified Dr. Tsingine as "Dr. George Tsung."  (Tr. 21.)

[3]  Because the administrative record is not in chronological order, citations to pages in chronological order are not in numerical order.

1  was prescribed medications including sulfasalazine, MS Contin (morphine), and Percocet.

2  (Tr. 235, 237, 267, 270, 647.)

3        On May 30, 2008, Dr. Sumner noted that Plaintiff presented "with disabling pain but

4  unclear if this is completely the result of her arthritis.  She does appear to have a chronic pain

5  syndrome that makes it difficult to work." (Tr. 453.)  On March 3, 2009, Dr. Sumner wrote a

6  one paragraph letter directed "[t]o whom it may concern," stating that she treats Plaintiff in the

7  rheumatology clinic for spondyloarthritis and that Plaintiff's "arthritis in her back and

8  joints . . . causes considerable pain and disability," "limits her ability to work[,] and often makes

9  it difficult for her to get out of bed in the morning." (Tr. 689.)  Dr. Sumner further noted that

10  she discontinued some of Plaintiff's medications because of a skin infection, and that her

11  condition was "not well controlled and she suffers chronic pain in her back, hips, ankles, neck

12  and knees." (*Id*.)

13        On July 20, 2009, Dr. Tsingine completed a "Medical Assessment of Ability to Do

14  Work Related Activities" and found that Plaintiff had significant physical functional limitations.

15  (Tr. 217-19.)  She noted that Plaintiff could lift no more than ten pounds, stand and/or walk less

16  than two hours in an eight-hour day, and sit less than six hours in an eight-hour day, "less than

17  [two hours] continuous[ly]." (Tr. 217.)  In support of her conclusion, Dr. Tsingine explained

18  that Plaintiff "has chronic pain limiting standing, sitting, lifting, pushing and pulling.  Pain in

19  neck, shoulder, back . . . ." (Tr. 217.)  Dr. Tsingine also completed a pain assessment and found

20  that Plaintiff had severe pain, and was "[e]xtremely impaired due to pain which precludes ability

21  to function," constantly interferes with attention and concentration, and often resulted in failure

22  to complete tasks in a timely manner. (Tr. 220-21.)  Dr. Tsingine explained that she, Dr. Irick

23  and Dr. Sumner regularly provide treatment and medication to Plaintiff.  Dr. Tsingine noted that

24  Plaintiff was diagnosed with "hypertension, chronic pain syndrome, morbid obesity and

25  seronegative spondyloarthritis with involvement of pain . . . knee, shoulders, neck, and back

26  joints." (Tr. 222.)

27

28

## B.  Agency Examining and Non-Examining Physicians

On August 21, 2007, agency consulting examining physician, David Rand, M.D., examined Plaintiff.  (Tr. 201-204.)  Plaintiff reported a history of a back disorder resulting in pain and physical limitations for which she took medication.  (Tr. 201-202.)  On examination, Dr. Rand noted that Plaintiff was obese and had a limited range of motion in her lumbar spine, but had full cervical spine range of motion, "normal" joints in her upper and lower extremities without "erythema" or "deformities," normal muscle strength, normal sensation, and bilaterally equal reflexes.  (Tr. 202-203.)  Dr. Rand concluded that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, walk, sit, and stand for six hours, perform postural movements occasionally with the exception of using ropes, ladders, or scaffolds, and frequently use her upper extremities bilaterally, but should avoid heights and moving machinery.  (Tr. 203-204.)  Dr. Rand's report states that "no x-rays or records are available," and that his diagnosis was based on Plaintiff's reported history and his examination of Plaintiff.  (Tr. 204.)

In October 2007, state agency physician M. Miller, M.D., reviewed the medical record and completed a Physical Residual Functional Capacity Assessment.  (Tr. 208-15.)  Dr. Miller determined that Plaintiff retained the physical residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk and sit about six hours in an eight-hour day, push and/or pull within her lifting capacity, and climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally.  (Tr. 209-212.)  He also found that Plaintiff could  perform work that did not require climbing ladders, ropes, or scaffolds or concentrated exposure to temperature extremes or hazards such as machinery or heights, and that Plaintiff had no manipulative, visual, communicative, or other environmental limitations. (Tr. 209-212.)

On February 28, 2008, Thomas Glodek, M.D., completed a "Case Analysis" stating that, "[a]fter a complete review of the file, the prior decision is affirmed."  (Tr. 216.) Dr. Glodek did not explain his decision or identify the records he reviewed.

**III.  Administrative Hearing Testimony**

At the time of the administrative hearing, Plaintiff was in her forties and had an eleventh grade education.  (Tr. 54, 122, 131.)  Although Plaintiff held various short-term jobs, she did not have any past "relevant work" as defined in 20 C.F.R. § 416.965(a).[4]  (Tr. 54.)  Plaintiff testified at the administrative hearing that she experienced pain from arthritis in her hips, back, neck, and shoulders.  (Tr. 41-42.)  She also testified that she took MS Contin (morphine) and Percocet daily for pain (Tr. 44-45), and that she suffered from fatigue and rested for about one-and-one-half hours during the day.  (Tr. 48.)

Vocational expert, David Janus, also testified. The ALJ asked the vocational expert what work a person could perform if you assume "a person . . . capable of doing light exertional work, wouldn't have to lift more than 20 pounds occasionally and up to ten pounds on a more frequent basis . . . . postural limitations [including] no crawling or crouching or climbing or squatting or kneeling, and . . . no use of feet for pushing or pulling of foot or leg controls.  Add a sit/stand option so the employee could alternate between sitting and standing and still perform the job duties."  (Tr. 55.)  The vocational expert responded that a person with those limitations could perform work as an assembler, parking lot cashier, and packer.  (*Id*.)  In response to a hypothetical including the limitations that Dr. Tsingine assessed (Tr. 220-222), the vocational expert testified that sustained work would be precluded.  (Tr. 57.)

**IV.  The ALJ's Decision**

A claimant is considered disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income

---

[4]  Past relevant work is work "done within the last 15 years [that] lasted long enough for you to learn to do it, and was substantial gainful activity."  20 C.F.R. § 416.965(a).

1  disability insurance benefits).  To determine whether a claimant is disabled, the ALJ uses a five-
2  step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

3          In the first two steps, a claimant seeking disability benefits must initially demonstrate
4  (1) that he is not presently engaged in a substantial gainful activity, and (2) that his disability
5  is severe. 20 C.F.R. § 404.1520(a)-(c).  If a claimant meets steps one and two, he may be found
6  disabled in two ways at steps three and four.  At step three, he may prove that his impairment
7  or combination of impairments meets or equals an impairment in the Listing of Impairments
8  found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so,
9  the claimant is presumptively disabled.  If not, the ALJ proceeds to step four.  At step four, a
10  claimant must prove that his residual functional capacity (RFC) precludes him from performing
11  his past work. 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant establishes this prima facie case,
12  the burden shifts to the government at step five to establish that the claimant can perform other
13  jobs that exist in significant number in the national economy, considering the claimant's RFC,
14  age, work experience, and education.  If the government does not meet this burden, then the
15  claimant is considered disabled within the meaning of the Social Security Act.

16          Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had
17  not engaged in substantial gainful activity during the relevant period. (Tr. 20.)  At step two, the
18  ALJ found that Plaintiff had "spondyloarthritis and morbid obesity," "which are severe when
19  considered in combination."  (*Id*.)  At the third step, the ALJ found that the severity of
20  Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in
21  20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)  At step four, the ALJ concluded that Plaintiff
22  retains "the residual functional capacity to perform light work with restrictions as defined in 20
23  C.F.R. § 416.967(b).  She requires a sit/stand option and should do no crawling, climbing,
24  squatting, kneeling, and no pushing or pulling with her lower extremities." (Tr. 21.)  The ALJ
25  concluded that Plaintiff had no past relevant work as defined in 20 C.F.R. § 416.965. (Tr. 22.)
26  At step five, the ALJ found that considering Plaintiff's age, education, work experience and
27  RFC, she could perform "jobs that exist in significant numbers in the national economy."

28

1  (Tr. 23.) The ALJ concluded that Plaintiff was not disabled within the meaning of the Social

2  Security Act. (*Id.*)

3  **V.  Standard of Review**

4          The district court has the "power to enter, upon the pleadings and transcript of record,

5  a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

6  Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The

7  district court reviews the Commissioner's final decision under the substantial evidence standard,

8  and must affirm the Commissioner's decision if it is supported by substantial evidence and it

9  is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r*

10  *of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

11          Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for

12  errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Substantial

13  evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant

14  evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

15  *v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v Barnhart*, 433 F.3d

16  683, 686 (9th Cir. 2005).

17          In determining whether substantial evidence supports a decision, the court considers

18  the record as a whole and "may not affirm simply by isolating a specific quantum of supporting

19  evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation

20  omitted).  The court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ

21  did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC*

22  *v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of

23  administrative law that a reviewing court "must judge the propriety of [administrative] action

24  solely by the grounds invoked by the agency" and stating that if "those grounds are inadequate

25  or improper, the court is powerless to affirm the administrative action by substituting what it

26  considers to be a more adequate or proper basis.").

27

28

1    The ALJ is responsible for resolving conflicts in testimony, determining credibility,

2   and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When

3   the evidence before the ALJ is subject to more than one rational interpretation, [the court] must

4   defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1198

5   (9th Cir. 2004) (*citing Andrews*, 53 F.3d at 1041).

6   **VI. Discussion**

7    Plaintiff asserts that the ALJ erred by (1) rejecting the treating physicians'

8   assessments, (2) assigning significant weight to Dr. Rand's report, which was based on a "one-

9   time agency examination," and (3) rejecting Plaintiff's symptom testimony without providing

10  clear and convincing reasons for doing so.  Plaintiff asks the Court to remand her case for a

11  determination of benefits. (Doc. 20.)  In response, the Commissioner argues that the ALJ's

12  decision is free from legal error and is supported by substantial evidence in the record.

13  (Doc. 24.)  The Commissioner's response, however, includes rationale and citations to the

14  medical record in support of the ALJ's determination that the ALJ did not make or discuss in

15  his opinion.[5]  This Court's review is limited to "reasons and factual findings offered by the

16  ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been

17  thinking."  *Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1225-26 (9th Cir. 2009).

18  Accordingly, the Court limits its analysis to the rationale and facts upon which the ALJ relied

19  in determining that Plaintiff was not disabled.  *See Connett*, 340 F.3d at 874.

20   **A.   Weighing Medical Source Evidence**

21   In weighing medical source evidence, the Ninth Circuit distinguishes between three

22  types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians,

23

24    [5] For example, the Commissioner cites "a plethora . . . of favorable objective findings"
(Doc. 24 at 12) such as "normal strength, sensation and reflexes and absence of spinal
25  tenderness." (Doc. 24 at 4-5, 8-9, 12, 20-21.)  The Commissioner also argues that the
medication Plaintiff took for pain was effective and that an "impairment which can reasonably
26  be alleviated by treatment cannot serve as a basis for a finding of disability." (Doc. 24 at 9.)
The ALJ did not advance that rationale in support of his determination. (Tr. 18-22.)
27

28                                             - 8 -

1    who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat

2    nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more

3    weight is given to a treating physician's opinion.  *Id.*  The ALJ must provide clear and

4    convincing reasons supported by substantial evidence for rejecting a treating or an examining

5    physician's uncontradicted opinion. *Id*; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

6    An ALJ may reject the controverted opinion of a treating or an examining physician by

7    providing specific and legitimate reasons that are supported by substantial evidence in the

8    record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

9            Opinions from non-examining medical sources are entitled to less weight than treating

10   or examining physicians. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (citing *Lester*,

11   81 F.3d at 831).  However, an ALJ must evaluate the opinions from such sources and explain

12   the weight given to them.  Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2.

13   Although an ALJ generally gives more weight to an examining physician's opinion than to a

14   non-examining physician's opinion, a non-examining physician's opinion may nonetheless

15   constitute substantial evidence if it is consistent with other independent evidence in the record.

16   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion

17   evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and

18   the quality of the explanation provided; the consistency of the medical opinion with the record

19   as a whole; [and] the specialty of the physician providing the opinion."  *Orn*, 495 F.3d at 631.

20                  **B.  The ALJ's Rationale for Rejecting the Treating Physicians' Opinions**

21           Plaintiff argues that the ALJ erred by rejecting the assessments of treating physicians

22   Dr. Tsingine and Dr. Sumner in favor of the opinion of examining physician Dr. Rand.  The

23   ALJ stated that he "gave no weight to" Dr. Sumner's March 10, 2009 assessment that Plaintiff

24   was "totally disabled."  (Tr. 21, 689.)  The ALJ also stated that he "gave no weight to"

25

26

27

28

1    Dr. Tsingine's July 2009 Medical Source Statement that found Plaintiff "totally disabled."[6]

2    (Tr. 21, 220-21.)   In contrast, the ALJ gave "significant weight" to examining physician

3    Dr. Rand's assessment that Plaintiff could perform "light exertion with postural and

4    environmental limitations." (Doc. 21, 201-04.) The ALJ explained that the treating physicians'

5    opinions (1) were "inconsistent with the objective findings or the record as a whole," and

6    (2) "appear[ed to be] based almost wholly upon the claimant's subjective complaints without

7    any independent corroborative objective medical evidence." (Tr. 21.)  Plaintiff argues that the

8    ALJ was not qualified to independently judge the sufficiency of the objective findings in the

9    record, gave legally insufficient, "vague boilerplate" reasons for rejecting the treating

10   physicians' assessments, and unfairly rejected the treating physicians' assessments because they

11   were based on Plaintiff's reported symptoms.  (Tr. 20 at 16-18.)

12          When there is a conflict between the opinions of a treating physician and an

13   examining physician, the ALJ may disregard the opinion of the treating physician only if he sets

14   forth "specific and legitimate reasons supported by substantial evidence in the record for doing

15   so." *Lester,* 81 F.3d at 830; *see also Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986).  The

16   ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and

17   conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*,

18   157 F.3d at 725.  As discussed below, the ALJ failed to meet this burden.[7]

19                    **1.  Independently Judged Medical Evidence**

20          Plaintiff first argues that because the ALJ lacks medical expertise, he erred by judging

21   "the sufficiency of the objective findings in the record."  (Doc. 20 at 16.)  As Plaintiff notes, an

22

23   _____

24   [6] Respondents are correct that the ALJ is not bound by a physician's opinion on the
     ultimate issue of disability.  *See Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (a

25   treating physician's opinion is not necessarily conclusive as to the ultimate issue of disability).

26   [7] The Court need not determine whether the more demanding "clear and convincing"
     standard applies because the ALJ failed to meet the lesser "specific and legitimate" standard.

27

28                                         - 10 -

1  ALJ may not substitute his own opinion for the findings and opinion of a physician. *See*
2  *Gonzalez Perez v. Sec'y of Health and Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987); *see*
3  *also McBrayer v. Sec'y of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983) (ALJ
4  cannot arbitrarily substitute own judgment for competent medical opinion). While the ALJ may
5  not base his decision on "his own expertise," he may "choose between properly submitted
6  medical opinions." *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978).  Here, the ALJ
7  considered the medical opinions and, although the Court finds that he did not provide legally
8  sufficient reasons for rejecting the treating physicians' opinions in favor of the examining
9  physician's opinion, as discussed in Sections B.2, B.3 and B.4 below, the ALJ did not err by
10  substituting his own opinions.

11                           **2.  Boilerplate Rationale**

12         Plaintiff next argues that the ALJ's "vague boilerplate" rationale is legally insufficient
13  for rejecting the treating physicians' assessments.  (Doc. 20 at 16-17.)  The Court agrees.  *See*
14  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("[t]o say that medical opinions are not
15  supported by sufficient objective findings or are contrary to the preponderant conclusions
16  mandated by the [required] objective findings does not achieve the level of specificity").  The
17  ALJ gave "no weight" to the assessments of treating physicians Tsingine and Sumner because
18  they were "inconsistent with the objective findings or the record as a whole."  (Tr. 21.)  The
19  ALJ's opinion, however, includes a very limited discussion of the medical record.

20         The opinion notes Plaintiff's history of seronegative spondyloarthritis, her diagnoses
21  of osteoarthritis in her right knee, hypertension, and obesity, and her complaints of low back and
22  left shoulder pain.  (*Id.*)  The ALJ opined that the record contains "very little evidence of
23  treatment," that Plaintiff "received conservative treatment," and that examining physician
24  Dr. Rand noted that Plaintiff had a "normal gait."  (*Id.*) The ALJ, however, does not sufficiently
25  identify the "objective findings" or other record evidence with which the treating physicians'
26  opinions were inconsistent.

27
28                                     - 11 -

1    The ALJ must do more than offer his conclusions.  "He must set forth his own
2    interpretations and explain why they, rather than the doctors' are correct." *Embrey*, 849 F.2d
3    at 422.  The ALJ did not give sufficient specific and legitimate reasons, let alone "clear and
4    convincing" reasons, for rejecting the assessment of Plaintiff's treating rheumatologist
5    Dr. Sumner, that Plaintiff's "arthritis in her back and joints . . . causes considerable pain and
6    disability," "limits her ability to work[,] and often makes it difficult for her to get out of bed in
7    the morning." (Tr. 689.)  Similarly, the ALJ did not sufficiently explain why he gave no weight
8    to Dr. Tsingine's detailed assessment of Plaintiff's capacity for standing, lifting, carrying, and
9    sitting.  The ALJ erred in this regard.

### 3. Inconsistency with Objective Findings

10   As previously noted, the ALJ rejected the assessments of treating physicians Sumner
11   and Tsingine in favor of the assessment of examining agency physician Dr. Rand. (Tr. 21, 201-
12   04.)   The ALJ noted that Dr. Rand's one-time physical examination of Plaintiff was
13   "unremarkable," that he "diagnosed ankylosing spondylitis by history and obesity," and
14   concluded that Plaintiff could "perform light exertion with postural and environmental
15   limitations." (Tr. 21, 201-04.)  The ALJ gave "significant weight" to Dr. Rand's conclusions
16   "because he examined the claimant and his conclusions are consistent with the objective
17   findings and the evidence of record." (Tr. 21.)  The ALJ did not identify the objective findings
18   or other record evidence supporting Dr. Rand's opinion.
19

20   The ALJ also failed to explain the differences between Dr. Rand's one-time
21   examination and the examinations that Plaintiff's treating rheumatologist and primary care
22   doctor conducted.  "[I]t is incumbent on the ALJ to provide detailed, reasoned, and legitimate
23   rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422 (citing *Cotton*,
24   799 F.2d at 1408).  The ALJ erred by not providing such rationale in this case. *See McAllister*
25   *v. Sullivan,* 888 F.2d 599, 602 (9th Cir.1989) (rejection of treating physician's opinion on the
26   ground that it was contrary to the clinical findings in the record and the claimant's activities and
27   interests did not satisfy ALJ's burden because such reasons were "broad and vague, failing to

28                                               - 12 -

1   specify why the ALJ felt the treating physician's opinion was flawed"); *Franco v. Astrue*, 2012

2   WL 3192110, *5-6 (W.D. Wash. July 13, 2012) (finding ALJ's rejection of treating physician's

3   opinion on the ground that it was not "consistent with the objective medical evidence" was

4   legally insufficient where ALJ listed a few objective findings and a lay statement that plaintiff

5   did not use her cane all of the time).

6                      **4. Assessments based on Subjective Complaints**

7                Plaintiff also contends that it was "unfounded and unfair" for the ALJ to reject the

8   treating physicians' opinions because they were based on Plaintiff's subjective complaints.

9   Plaintiff argues that a patient's reports of complaints and medical history are essential diagnostic

10  tools. (Doc. 20 at 17.)  The ALJ rejected Dr. Tsingine's and Dr. Sumner's assessments because

11  they "appear[ed to be] based almost wholly upon the claimant's subjective complaints," which

12  the ALJ found were not credible.  (Tr. 21-22.)

13               A physician's reliance on the subjective complaints of a properly-discredited claimant

14  can, in some circumstances, be a legitimate basis for disregarding that physician's opinion.  An

15  ALJ, however, does not provide legally sufficient "reasons for rejecting an examining

16  physician's opinion by questioning the credibility of a patient's complaints where the doctor

17  does not discredit those complaints and supports his ultimate opinion with his own

18  observations."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008); *see*

19  *also Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability

20  'premised to a large extent upon the claimant's own accounts of his symptoms and limitations'

21  may be disregarded where those complaints have been 'properly discounted.'") (quoting *Fair*

22  *v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).  Here, Dr. Sumner and Dr. Tsingine did not

23  discredit Plaintiff's subjective complaints; thus, the ALJ erred in rejecting the treating

24  physicians' assessments on the basis that they appeared to be based on Plaintiff's subjective

25  reports.

26

27

28                                          - 13 -

## C. Weight Assigned to Examining Physician's Opinion

Plaintiff next argues that the ALJ erred in assigning "significant weight" to the report of consultative examining physician Dr. Rand and considering that report as substantial evidence to reject the treating physicians' opinions and to support his disability determination.[8] Plaintiff contends that Dr. Rand's report does not constitute substantial evidence because the report does not "even mention review of any background medical information," which is in violation of the applicable regulations, and because it is not based on independent findings. (Doc. 20 at 18 (citing 20 C.F.R. § 416.919n(c)(3)-(4))).

When a consultative examining physician bases his opinion on independent clinical findings, such findings are substantial evidence. *Orn*, 495 F.3d at 632. "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . , or (2) findings based on objective medical tests that the treating physician has not herself considered[.]" *Id.* (citation omitted); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examining physician's opinion on its own constituted substantial evidence because it rested on the physician's independent examination of the plaintiff).

However, when the diagnoses of the treating physician and the examining physician are the same but their conclusions about the claimant's functional limitations differ, the examining physician's opinion based on his examination is not considered an "independent finding," and the physician's "opinion does not alone constitute substantial evidence to support the rejection of [the claimant's] treating physicians' opinions." *Orn*, 495 F.3 at 633 (because examining physician's diagnoses were the same as those of the treating physicians, and only his

---

[8] As Plaintiff notes, the ALJ also mentioned the assessment forms completed by consulting physicians in October 2007, which found Petitioner capable of performing "light exertion with postural and environmental limitations." (Tr. 21.) However, because the ALJ did not state that his opinion was based on those assessments, the Court will not further discuss them. (*See* Tr. 21 (citing hearing exhibit 3F, Dr. Glodek's October 2007 assessment, located at Tr. 207-15)).

1   conclusions differed, examining physician's "conclusion concerning [the plaintiff's] ability to
2   stand or walk based on that examination was not an 'independent finding,' and his opinion does
3   not alone constitute substantial evidence to support the rejection of [the plaintiff's] treating
4   physicians' opinions.").

5          The record reflects that during his one-time examination of Plaintiff, Dr. Rand
6   obtained a medical history from Plaintiff.  She discussed her x-rays and the magnetic resonance
7   imaging that her treating physicians considered when diagnosing her with ankylosing
8   spondylitis. (Tr. 201.) Plaintiff described her symptoms and daily activities, and identified her
9   current medications. (*Id*.) Dr. Rand performed a physical examination and stated that, based
10  on Plaintiff's reported history and his examination, he diagnosed "ankylosing spondylitis" and
11  "obesity." (Tr. 203-04.)

12         Dr. Rand's diagnosis does not substantially differ from Dr. Sumner's or
13  Dr. Tsingine's.  Additionally, the Commissioner's response does not identify any specific
14  independent clinical findings supporting Dr. Rand's opinion or describe how Dr. Rand's
15  examination differed from those performed by Plaintiff's treating physicians.  Plaintiff and the
16  Commissioner agree that Dr. Rand relied on the same clinical findings, as reported by Plaintiff,
17  and gave the same diagnoses as the treating physicians, but differed in his conclusions regarding
18  Plaintiff's functional limitations. (Doc. 20 at 18, Doc. 24 at 15.)  In such a case, the examining
19  physician's conclusion based on his examination of Plaintiff was not an "'independent finding,'
20  and his opinion does not *alone* constitute substantial evidence to support the rejection of [the
21  plaintiff's] treating physicians' opinions."  *Orn*, 495 F.3d at 633 (emphasis added).
22  Accordingly, the ALJ erred in concluding that Dr. Rand's report alone constituted substantial
23  evidence in support of the ALJ's disability determination.

24         Plaintiff argues that because Dr. Rand's report does not constitute "substantial
25  evidence," there is no substantial evidence in the record that could support the ALJ's disability
26  determination and the Court should remand for a determination of benefits.  Although
27  Dr. Rand's report standing alone does not constitute substantial evidence, it may be considered

28
                                        - 15 -

1   such evidence in conjunction with other record evidence.  As previously discussed, the ALJ did

2   not adequately discuss and evaluate the medical record, including Dr. Tsingine's and

3   Dr. Sumner's assessments, and the Court declines to speculate whether substantial evidence

4   would support the ALJ's disability determination reached after sufficient consideration and

5   discussion of the medical record.

6   **D.  Credibility of Plaintiff's Reported Pain and Symptoms**

7   **1.  The Two-Step Analysis**

8   An ALJ engages in a two-step analysis to determine whether a claimant's testimony

9   regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028,

10  1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented

11  objective medical evidence of an underlying impairment 'which could reasonably be expected

12  to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947

13  F.2d 341, 344 (9th Cir. 1991) (en banc)).  The claimant is not required to show objective

14  medical evidence of the pain itself or of a causal relationship between the impairment and the

15  symptom.  *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively

16  verifiable impairment "could reasonably be expected" to produce his pain. *Lingenfelter*, 504

17  F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle v. Comm'r

18  of Soc. Sec.*, 533 F.3d at 1160–61 (9th Cir. 2008) ("requiring that the medical impairment 'could

19  reasonably be expected to produce' pain or another symptom . . . requires only that the causal

20  relationship be a reasonable inference, not a medically proven phenomenon").

21  If a claimant shows that he suffers from an underlying medical impairment that could

22  reasonably be expected to produce his pain or other symptoms, the ALJ must "evaluate the

23  intensity and persistence of [the] symptoms" to determine how the symptoms, including pain,

24  limit the claimant's ability to work.  *See* 20 C.F.R. § 404.1529(c)(1).  In making this evaluation,

25  the ALJ may consider the objective medical evidence, the claimant's daily activities, the

26  location, duration, frequency, and intensity of the claimant's pain or other symptoms,

27

28

1  precipitating and aggravating factors, medication taken, and treatments for relief of pain or other

2  symptoms.  *See* 20 C.F.R. § 404.1529(c); SSR 96–7p at 3; *Bunnell*, 947 F.2d at 346.

3        At this second evaluative step, the ALJ may reject a claimant's testimony regarding

4  the severity of his symptoms only if the ALJ "makes a finding of malingering based on

5  affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466

6  F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for finding

7  the claimant not credible.  *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at

8  1036).

9              **2. Plaintiff's Pain and Symptoms**

10        Here, the parties do not dispute that Plaintiff produced evidence that her medically

11  determinable impairments could reasonably be expected to cause her alleged symptoms and the

12  ALJ did not find that Plaintiff was malingering.  The ALJ, however, did not find that Plaintiff's

13  testimony was credible.  The ALJ stated that he "g[a]ve no weight to [Plaintiff's] pain testimony

14  because it is not consistent with the objective findings or the record as a whole." (Tr. 21.)  He

15  further stated, "I cannot rely on the claimant's testimony as establishing greater limitations than

16  those set forth above because her statements are not entirely credible." (*Id.* at 22.)  The parties

17  dispute whether the ALJ offered legally sufficient reasons in support of his determination that

18  Plaintiff's testimony regarding her pain and limitations was not credible.

19        Relying on the Ninth Circuit decision in *Bunnell*, the Commissioner initially argues

20  that an ALJ need not provide "clear and convincing" reasons for discrediting a claimant's

21  testimony regarding subjective symptoms, and instead must merely make findings "properly

22  supported by the record [and] sufficiently specific to allow a reviewing court to conclude the

23  adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily

24  discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345–46 (citation omitted).

25  In *Bunnell,* the Court did not apply the "clear and convincing" standard, and the Commissioner

26  argues that because no subsequent *en banc* court has overturned *Bunnell*, its standard remains

27  the law of the Ninth Circuit. (Doc. 24 at 16-17.)  Although the Ninth Circuit has not overturned

28

1  *Bunnell*, subsequent cases have elaborated on its holding and have accepted the clear and

2  convincing standard.  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir.

3  2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504 F.3d at 1036;

4  *Reddick*, 157 F.3d at 722; *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).  Accordingly,

5  the Court will determine whether the ALJ provided clear and convincing reasons for

6  discounting Plaintiff's credibility.

7       Here, the ALJ rejected Plaintiff's pain testimony because it was "not consistent with

8  the objective findings or the record as a whole."  (Tr. 21.)  As Plaintiff argues, this justification

9  for rejecting Plaintiff's testimony is insufficient because the Ninth Circuit recognizes that an

10  ALJ may not reject a claimant's testimony regarding the severity of his subjective symptoms,

11  including pain, on the ground that no objective medical evidence supported that testimony.  *See*

12  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (ALJ's rejection of claimant's

13  testimony because it was "not consistent with or supported by the overall medical evidence of

14  record" is the type of justification the Ninth Circuit has recognized as prohibited by the social

15  security regulations) (citing SSR 96-7p); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

16  1997) (same).  Additionally, although "[c]ontradiction with the medical record is a sufficient

17  basis for rejecting the claimant's subjective testimony," the ALJ's inadequate discussion of the

18  medical record and failure to identify any contradictions between Plaintiff's testimony and the

19  relevant medical evidence impedes the Court's ability to evaluate the ALJ's credibility

20  determination.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir.

21  2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

22       The ALJ also rejected Plaintiff's pain testimony because there was "very little

23  evidence of treatment," and because Plaintiff "does not receive ongoing care and when treated,

24  she received only conservative treatment."  (Tr. at 21-22.)  "Although a conservative course of

25  treatment can undermine allegations of debilitating pain, such fact is not a proper basis for

26  rejecting the claimant's credibility where the claimant has a good reason for not seeking more

27  aggressive treatment."  *Orn*, 495 F.3d at 638.  Here, the ALJ did not provide a narrative of the

28

1    medical record and did not identify the treatment he considered conservative.  The lack of such

2    a discussion prevents the Court from meaningfully assessing the legitimacy of the ALJ's

3    adverse credibility determination based on the nature of treatment Plaintiff received.  *See*

4    *Robbins*, 466 F.3d at 884 (even when ALJ gives "facially legitimate" reasons in support of an

5    adverse credibility determination, "a complete lack of meaningful explanation gives th[e] court

6    nothing with which to assess its legitimacy").

7            The ALJ also rejected Plaintiff's pain testimony because she did not seek "out

8    treatment modalities that alleviate . . . severe and unremitting pain" and did not use a TENS

9    unit, cane, walker, wheelchair, or heating pad. (Tr. 21-22.)  The record, however, indicates that

10   Plaintiff took medication for pain, including Percocet, MS Contin, and sulfasalazine. (Tr. 44-45,

11   237, 267.)  Additionally, Plaintiff received treatment from pain specialist Dr. Irick at PIMC.

12   (Tr. 222.)  There is no evidence in the record that Plaintiff was prescribed a TENS unit, cane,

13   walker, wheelchair, or directed to use a heating pad and thus the ALJ's speculation that Plaintiff

14   should have used those or other "treatment modalities"is not a clear and convincing reason for

15   discounting her credibility.  *See Santiago v. Astrue*, 2010 WL 466052, *17 (D. Ariz. Feb. 10,

16   2010) (ALJ improperly discounted plaintiff's credibility because she did not use biofeedback,

17   acupuncture, or a TENS unit because there was no evidence that those modalities had been

18   prescribed).

19           In further support of his rejection of Plaintiff's pain testimony, the ALJ found that

20   Plaintiff was uncooperative during Dr. Rand's examination because she refused to walk on her

21   toes or heels, or squat. (Tr. 22.)  Dr. Rand, however, did not report that Plaintiff was

22   uncooperative, but rather that she "refused" to perform certain actions "because of back and leg

23   pain." (Tr. 202.) In rejecting Plaintiff's pain testimony because she refused to do certain things

24   during Dr. Rand's examination, the ALJ also disregarded Dr. Tsingine's July 2009 treatment

25   notes stating that Plaintiff was "unable to walk on toes, heels . . . squat 20%." (Tr. 226.)

26           Finally, the ALJ discounted Plaintiff's credibility based on her activities of daily

27   living, including caring for her three children ages eight, eighteen and twenty-two, performing

28                                                    - 19 -

1    "household chores, grocery shopp[ing], r[unning] errands (doctors' appointments, AFDC

2    appointments), and us[ing] public transportation." (Doc. 22.) These limited activities standing

3    alone do not support the ALJ's rejection of Plaintiff's pain testimony. *See Vertigan v. Halter*,

4    260 F.3d 1044, 1050 (9th Cir. 2001) (stating that "the mere fact that a plaintiff has carried on

5    certain daily activities . . . does not in any way detract from her credibility as to her overall

6    disability"). Considering the Court's previous finding that the ALJ failed to properly consider

7    and discuss the medical opinion evidence and the medical record, the ALJ should reconsider

8    Plaintiff's credibility especially because his adverse credibility determination was largely based

9    on unspecified inconsistencies between Plaintiff's testimony and "the objective findings or the

10    record as a whole." (Tr. 21.)

11    **VII.  Remand**

12            Having found that the ALJ erred by failing to give sufficiently specific reasons for

13    rejecting the assessments of Plaintiff's treating physicians Sumner and Tsingine, considering

14    the report of examining physician Rand "substantial evidence" in support of the ALJ's non-

15    disability determination, and failing to provide clear and convincing reasons for rejecting

16    Plaintiff's symptom testimony, the Court must determine whether to remand for a determination

17    of benefits or for further proceedings.[9]  *Smolen*, 80 F.3d at 1292.  "[R]emand for further

18    proceedings is unnecessary if the record is fully developed and it is clear from the record that

19    the ALJ would be required to award benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th

20    Cir. 2001).  Specifically, benefits should be awarded when (1) the ALJ has failed to provide

21    legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding

22    issues that must be resolved before a determination of disability can be made, and (3) it is clear

23    from the record that the ALJ would be required to find the claimant disabled were such evidence

24    credited.  *Smolen*, 80 F.3d at 1292.

25    _____

26            [9]   These errors were not harmless because the vocational expert testified that the
      limitations assessed by Dr. Tsingine would preclude work and Plaintiff testified to limitations
27    that would preclude sustained work.  (Tr. 48, 57.)

28                                          - 20 -

However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." *Hill*, 2012 WL at *8 (citing *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)). Additionally, when an ALJ fails to "give sufficiently specific reasons for rejecting the conclusion of [a physician]," it is proper to remand the matter for "proper consideration of the physicians' evidence." *See Embrey*, 849 F.2d at 422 (remanding for further proceedings when ALJ rejected opinion of treating physician but did not relate objective factors on which he relied to reject the opinion); *see also Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir. 1996) (remanding for further proceedings where ALJ failed to "set forth specific, legitimate reasons" for crediting opinion of nonexamining consultant over that of examining psychologist).

Accordingly, the Court exercises its discretion and remands this matter to the ALJ for further proceedings and consideration of the record because "[t]here may be evidence in the record to which the [ALJ] can point to provide the requisite" reasons for rejecting the opinions of Dr. Tsingine and Dr. Sumner and for discounting Plaintiff's credibility and the "Secretary is in a better position than this court to perform this task." *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (remanding to allow the Secretary to review the record and provide legally sufficient reasons for rejecting the treating physician's report and, alternatively, permitting the Secretary to award benefits).

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings consistent with this Order. The Clerk of Court is directed to terminate this action.

DATED this 23rd day of January, 2013.

_____
Bridget S. Bade
United States Magistrate Judge